### James McIntosh, et al., v. Carrie E. Fisher, et al.

1. DECLARATIONS—*when competent to establish gift.* Where it has been shown that an actual delivery of personal property has been made by the deceased which according to the intention might or might not constitute a gift in law, the declarations of the deceased made both before and after such delivery are competent.

2. INCOMPETENT EVIDENCE—*when admission of, will not reverse.* Where a trial is had before a court without a jury, the admission of incompetent evidence will not reverse if there is sufficient competent evidence in the record to sustain the finding.

Petition under statute to compel property to be turned over to executor. Appeal from the Circuit Court of McDonough County; the Hon. JOHN A. GRAY, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed March 20, 1906.

CHARLES W. FLACK and RALPH W. PONTIOUS, for appellants.

CHARLES J. SCOFIELD, NEECE & SON and ELTING & O'HARRA, for appellees.

MR. JUSTICE RAMSAY delivered the opinion of the court.

Joseph W. McIntosh died on July 28, 1904, leaving his last will and testament in due form, executed on the second day of April, 1904, in which he appointed Carrie E. Fisher (one of his daughters) and one Elmer T. Walker, as executrix and executor.

On the 24th day of October, 1904, said executrix and executor filed their inventory of the estate of deceased, whereupon appellants (three of the children of deceased) filed their petition in the County Court of McDonough county, alleging that said Carrie E. Fisher and Alleyne McIntosh, another daughter of deceased, had in their possession a large amount of property belonging to the estate of deceased, which had not been inventoried as property of the estate, and praying that upon the hearing said property should be inventoried and turned over to the executors as estate property.

A hearing was had upon such petition and an order made thereon, from which order an appeal was taken to the Circuit Court of said McDonough county, where another trial was had before the judge without a jury, and judgment rendered to the effect that the property involved belonged to said Carrie E. Fisher and Alleyne McIntosh and was not the property of the estate. From that judgment appellants prosecute this appeal.

The appellees, Carrie E. Fisher and Alleyne McIntosh, claim that their father gave them the property in controversy a few days before his death, and the determination of this case turns upon the sufficiency and competency of the evidence to warrant the trial court in its holding that such property was a gift by the father to said two daughters.

Appellants first contend that the trial court erred in admitting in evidence the declarations of the deceased to the effect that he intended to make a gift to his daughters Carrie and Alleyne of the property in quesion, and invoke the rule announced in the case of Barnum v. Reed, 136 Ill., 388, in support of their contention. The rule there announced to the effect that such declarations are inadmissible in evidence

McIntosh v. Fisher.

to show an intention merely on the part of deceased to make a gift would control us in the disposition of this case if appellees' claim did not rest upon an alleged perfect gift, completed by actual delivery.

If deceased actually delivered the property in dispute to the daughters, or one of them (which subject of delivery we will discuss later), under circumstances which may, or may not, have been a gift according to the intention of the testator, then his statements both before and after that time are competent in determining the character of the delivery, and the court committed no error in receiving such evidence.

The other evidence, to which objection was made, having for its purpose the fixing of the value of the different amounts received by the various children, cannot have been so prejudicial as to warrant a reversal. Even if it was incompetent, it will be presumed that the trial court disregarded or ignored it. "Where there is sufficient competent evidence to justify a judgment, the admission of incompetent evidence is not a ground for reversal where the case is tried by the court without a jury." Kreiling v. Northrup, 215 Ill., 195.

It is next contended by appellants that there was not sufficient evidence to warrant the trial court in finding that the property involved was in fact given by the father to his two daughters, Carrie and Alleyne.

It would be impossible for us to review all the evidence in this case, as it is very voluminous and in many particulars in sharp conflict; and while the evidence upon the subject of gift is very close and in some respects far from satisfactory, yet we think it sufficient to sustain the findings of the trial court, whose means of judging of the weight of the evidence and character of the witnesses is superior to the means which we possess.

There is ample evidence to the effect that when deceased executed his will he then intended to make, for his daughters, Carrie and Alleyne, further and additional provision to that named in the will, and that he did not want that further and additional provision in the will, as he meant to

attend to that while he was alive. It appears that the two daughters lived with their father as part of his family and had for many years prior to the time of his death; that a few days before his death deceased directed Carrie to go to the bank and get his black pocketbook with the papers, which she did. Afterwards deceased and his said two daughters were seen together looking over papers (which were the ones relating to the property in dispute), with the black book lying near by, and that very soon after that deceased said to a domestic that he wanted Carrie and Alleyne to go ahead and build a new house; that he had given them a plenty and that he wanted the domestic to remain in their service as she had in his. Joseph W. McIntosh, son of the deceased, testified that only a short time before his father's death, deceased said to him: "I have given to Alleyne and Carrie a little more than I have the rest of you, but they deserve it. I have given Alleyne and Carrie my gas stock, my Atchison, Topeka and Santa Fe stock, and all my other stock and mortgages."

It also would seem from the evidence that said pocketbook and papers were never returned to the bank after withdrawn by Carrie, but were in the possession of Alleyne in her chiffonier, and in her own custody and control immediately after her father's death.

There was, therefore, very strong evidence tending to show an actual delivery by the father of the property in dispute.

Appellants, however, lay great stress upon the fact that Elmer T. Walker visited deceased shortly before his death and had a conversation with him and at the request of deceased prepared a memorandum giving direction how he wished certain of his property handled, which they contend dispute the alleged gift to Carrie and Alleyne. How much weight was to be given to such memorandum and conversation had at the time between Walker and deceased, was a matter for the trial court to determine, and upon that head we cannot say that his holding thereon was against the manifest weight of the evidence. Such memorandum and said conversation may tend to disprove the gift; but to us

McIntosh v. Fisher.

it seems that they are far from being conclusive. According to the memorandum, deceased wanted to give Joseph W. a 240-acre farm, which he had already given him by his will. And deceased said he wanted to tell him (Walker) what he had already done, so there would be no misunderstanding, and would like to make a few requests in regard to it; that he did not want any lawyer to interfere, etc. Certainly such statements must have been more or less confused and uncertain, as deceased was in no way attempting to make a new will or change or alter the old one; furthermore, Walker says it was very difficult to talk to deceased and that the conversation had to be almost in a whisper and it was difficult to hear what he said.

Under the circumstances it seems to us that no definite understanding was stated by deceased to Walker and that the effort of Walker to give force to the statement by adding to the memorandum the words: "Memorandum taken down at the request of J. W. McIntosh while entirely rational in every way," adds nothing to the force of the claim. The memorandum was that of the witness Walker and not that of deceased. In it a gift of lands was attempted; a thing Walker must have known would be wholly inoperative unless signed by deceased and witnessed. We do not regard such evidence as of such a convincing and conclusive character that we can say the trial court erred in not adopting the theory suggested by it.

Stress is also laid by appellants upon the fact that some of the appellees sought to have appellants release their claim to Carrie and Alleyne to the property involved by executing a paper to that effect, but this effort may well have been a result of a desire to settle without suit and thus avoid the cost and delay of litigation. This theory finds support in the fact that the effort to so adjust was forwarded by some of the children of deceased other than Carrie and Alleyne.

It was the duty of the trial court, sitting in place of a jury, to hear the evidence and determine the weight to be given to it, and his finding thereon should have the same

force and effect as the verdict of the jury. We do not think the findings of the trial court were against the weight of the evidence; but that there was sufficient evidence in the case to support the judgment.

The judgment is therefore affirmed.

*Affirmed.*